1999 UT App 090

Val NEWMAN and Ruth Kofod, Petitioners,

v.

Honorable Charles D. BEHRENS, Judge, Third District Juvenile Court; and State of Utah, Division of Child and Family Services, Respondents.

No. 981207–CA.

Court of Appeals of Utah.

March 25, 1999.

---

Toni Marie Sutliff, Salt Lake City, for Petitioners.

Jan Graham, Attorney General and John Peterson, Attorney General's Office, Salt Lake City, for Respondents.

Martha Pierce and Elizabeth Knight, Salt Lake City, for Guardians Ad Litem.

Before Judges BILLINGS, JACKSON, and ORME.

## OPINION

BILLINGS, Judge.

¶ 1  This matter is before the court on a Petition for Extraordinary Relief filed by the subject child's paternal aunt and grandmother. We granted the petition but, absent a proper motion, did not stay the proceedings in the juvenile court. We dismiss the Petition as improvidently granted.

## BACKGROUND

¶ 2  C.O. is the mother of S.O., J.O., and C.K. On September 7, 1996, the Department of Child and Family Services (DCFS) removed C.K.'s half-siblings (J.O. and S.O.) into protective custody based on its petition alleging physical abuse and neglect of the two children. On September 10, 1996, the juvenile court convened a shelter hearing on behalf of the two older children. Following the shelter hearing, DCFS was awarded custody and guardianship. DCFS subsequently learned that the mother had another child, C.K., a five-month-old infant, whom she had previously placed with the child's paternal grandparents, Ruth and John Kofod. On October 16, 1996, DCFS filed an amended petition to include C.K. The court allowed the petition to be amended to include C.K., who was then living with her aunt (Val Newman) and her paternal grandparents.

¶ 3  On October 16, 1996, C.K.'s mother admitted to the allegations in DCFS's amended petition. Based upon the admission, the juvenile court found all three children to be neglected children and concluded it had jurisdiction over the parties. The juvenile court deprived C.K.'s mother of custody of all three children. The court placed custody and guardianship of S.O. and J.O. with DCFS. C.K. was "placed in the temporary custody and guardianship of her paternal grandparents, Ruth and John Kofod, with [DCFS] providing protective supervision services to the grandparents." Further, the court ordered DCFS "to investigate any other family members for a possible kinship placement and/or the possibility of Ruth and John Kofod being licensed for foster care." C.K.'s mother was granted DCFS-supervised visitation, pending an assessment at the Children's Center, and reunification was stated as the treatment plan's goal. The court also ordered, regarding all three children, that "unless restricted by the terms of this or further order, [DCFS] shall have the authority and responsibility as provided by law to determine where and with whom the children shall live." Subsequently, custody of C.K. was transferred from the Kofods to Newman.

¶ 4  On August 7, 1997, DCFS moved the court for a permanency hearing pursuant to Utah Code Ann. § 78–3a–312 (Supp.1997). The hearing, scheduled for October 7, was later rescheduled for October 24. In the meantime, DCFS, on September 4, 1997, moved for a hearing to review C.K.'s placement, pursuant to section 78–3a–307(6) (Supp.1997). DCFS alleged that Val Newman was allowing C.K.'s parents to reside in her home and was otherwise allowing unsupervised contact in violation of the court-ordered service plan, which provided that neither parent was to have unsupervised contact or overnight visitation rights with C.K. Both issues were eventually heard together on October 24, 1997. Val Newman had notice of the hearings on these matters.

¶ 5  Regarding DCFS's motion to review C.K.'s placement, the court determined that it was no longer in C.K.'s best interest to be

placed with Val Newman, and found it was in C.K.'s best interest to be removed from the placement with Val Newman and placed into DCFS custody and guardianship. Noting that Val Newman objected to the order, the court responded: "Val Newman has thirty days to come forward with counsel and address the issue further, if so desired."

¶ 6 On November, 14, 1997, Val Newman gave a letter to the court requesting restoration of custody. The court characterized the letter a Motion to Restore Custody, pursuant to Utah Code Ann. § 78–3a–903 (Supp.1997). On December 8, 1997, DCFS petitioned to terminate the parents' rights to the three children.

¶ 7 At a December 30, 1997, hearing, Val Newman and Ruth Kofod appeared without counsel. They were advised to obtain counsel "for their motion," and the court noted, "1. This matter is continued for trial on the State's Verified Petition for Termination of Parental Rights on April 20 & 21, 1998 . . .; 2. This matter is also continued on Val Newman's and Ruth Kofod's Motion to Restore custody of [C.K.] on February 13, 1998. . . ."

¶ 8 Val Newman appeared at the February 13, 1998, hearing with counsel. Through her counsel, she moved for a shelter hearing regarding C.K.'s removal from her home. The court found that, under section 78–3a–307(5) and (6), the statute governing kinship placements, a shelter hearing was not required and therefore denied the motion. Further, the court determined that its earlier order changing C.K.'s placement was proper given the court's duty to periodically review placements pursuant to Utah Code Ann. § 78–3a–307(6) (Supp.1997). The court ruled: "[H]aving denied [Newman's counsel's] motion for continuance, the matter before the court is whether the child is safe to return home to the Newman home ." Subsequently, C.K. was placed with foster parents who filed a Petition to Adopt C.K.

¶ 9 On April 13, 1998, Val Newman and Ruth Kofod petitioned this court for extraordinary relief, requesting we order the juvenile court hold a shelter hearing and that we stay the adoption of C.K. On May 8, 1998, we granted Val Newman and Ruth Kofod's petition to consider whether the juvenile court erred in not holding a shelter hearing, but we declined to stay the proceedings below, noting that "because petitioners have failed to demonstrate to the satisfaction of this court that they have sought a stay of the adoption proceedings in the trial court, their request for stay is denied." See Utah R.App.P. 8(a). Our Order was intended to encourage Newman's counsel to file a petition to stay proceedings in the trial court or, if she had already done so, to provide us with evidence of it. However, nothing further was received from counsel. Thus, proceedings were never stayed in the juvenile court. In our review of the record it appears that Newman sought a stay in April 1998, but there were no documents before this court to evidence this fact. It also appears the juvenile court never ruled on the motion. Further, a trial before the juvenile court on Petitioners' Petition to Restore Custody and the foster parents' Petition to Adopt was scheduled for February 22, 1999.

## ANALYSIS

¶ 10 Rule 65B of the Utah Rules of Civil Procedure governs our review of the trial court's actions on a petition for extraordinary relief, and provides that "*[w]here no other plain, speedy and adequate remedy is available,* a person may petition the court for extraordinary relief on any of the grounds set forth [including] . . . (d) Wrongful use of judicial authority or failure to comply with duty;" Utah R.Civ.P. 65B (a) (emphasis added).

¶ 11 Given that this petition seeks a writ in the nature of mandamus, we possess total discretion in our decision to grant or deny the petition for extraordinary relief. *See V–1 Oil Co. v. Department of Envtl. Quality,* 939 P.2d 1192, 1195 (Utah 1997). In *V–1 Oil,* the supreme court stated that "[a] court's decision to grant or deny a petition for extraordinary relief in the nature of mandamus is discretionary with the court to which the petition is brought, and it is discretionary in the sense that it is 'never a matter of right on behalf of the applicant.' " *Id.* (quoting *Renn v. Board of Pardons,* 904 P.2d 677, 683 (Utah 1995)).

¶ 12    We conclude Newman and Kofod possess a "plain, speedy and adequate remedy" in the form of an appeal after the February trial.  Upon filing a petition with this court, Newman should have provided us with evidence that she sought a stay of proceedings in the juvenile court.  This would have allowed us to halt the adoption process and rule on the issue presented in the extraordinary writ without interfering in ongoing proceedings in the juvenile court.  Instead, Newman failed to provide such evidence, and adoption proceedings have gone forward.  Consequently, we conclude that any analysis of the propriety of the denial of a shelter hearing is better left to consideration in the normal appellate process.[1]

## CONCLUSION

¶ 13    Based on our determination that Petitioners possess a plain, speedy, and adequate remedy through the normal appellate process, the Petition for Extraordinary Writ is hereby dismissed as improvidently granted.

¶ 14    WE CONCUR: NORMAN H. JACKSON, Judge, and GREGORY K. ORME, Judge.

---

1. Whether the issue should be considered, even if technically moot, can be addressed at that time and is much more appropriate in a direct appeal rather than an extraordinary writ.  *See L.R. v. State,* 967 P.2d 951 (Utah Ct.App.1998).